Graham, Judge,
delivered the opinion of the court:
This case was argued orally and with briefs, and submitted at the same time as the Hardware Underwriters case, C-1277 [65 C. Cls. 267], the joint argument and submission being with the understanding that the two cases involved practically the same questions of law. The findings of fact and opinion of the court in the Hardware Underwriters case were handed down on April 2, 1928, and the instant case was on April 16, 1928, remanded to the docket “ to await the final decision in the case of Hardware Underwriters and National Hardware Service Corporation, No. C-1277, decided by this court April 2, 1928.” A motion for a new trial and amended findings of fact was denied in said Hardware Underwriters case on May 28, 1928, and on August 17, 1928, a petition for a writ of certiorari was filed in the Supreme Court. The writ was denied on November 26, 1928.
In that case it was held that the plaintiffs cooperated to carry on a business of insurance, and that, regardless of what may have been the arrangements among themselves, and themselves and the attorney in fact, or the method of keeping the books, they constituted an association within the meaning of section 505 of the revenue act of 1917, 40 Stat. 316, and section 504 of the revenue act of 1918, 40 Stat. 1104, and were an “ association,” within the meaning of the said revenue acts of 1917 and 1918, issuing policies of fire insurance upon which a tax was imposed by section 504 (b) of the revenue act of 1917 and section 503 (b) of the revenue act of 1918; that the sums which the subscribers deposited in order to secure the issuance or renewal of policies of insurance were “ premiums ” within the meaning of that term as used in the sections last cited, and further, that the plaintiffs were not exempt from taxation under section 504 (d) of the revenue act of 1917, section 503 (cl) of the revenue act of 1918, and section 1013 (b) of the revenue act of 1924, 43 Stat. 343. All three of these grounds, it is to be assumed, were well taken judged by the action of the Supreme Court in refusing to grant a certiorari.
The same conclusion as to its being an association and the sums deposited by subscribers being premiums was sus *42 tained in the case of Pickering v. Alyea-Nichols Co., 21 Fed. (2d) 501, in which case a certiorari was denied by the Supreme Court, which was a case arising, like the Hardware Underwriters case, under the insurance law of the State of Illinois.
There is a difference in facts without a distinction in principles between the instant case and the Hardware Underwriters case. The instant case arose under the insurance law of the State of New' York and involves a tax under section 1000 (a) and (c)[1] of the revenue act of 1918, 40 Stat. 1126.
A like case, and involving the same statutes, is Jewelers’ Safety Fund Society v. Edwards, 24 Fed. (2d) 885, which also was a New York insurance company. In that case the plaintiff was an interinsurance and reciprocal association, as is the plaintiff here. That case held, as was held by this court in Hardware Underwriters case and by the circuit court of appeals in the Pickering case, supra, that the plaintiff was an “ association ” within the meaning of the act, and that the deposits made to secure insurance or renewal of it were premiums. So that on these two questions there is a unanimity of authority as far as the instant case is concerned, and the only question left is whether the plaintiff here was exempt from taxation under section 504 (d) of the revenue act of 1911, section 503 (d) of the revenue act of 1918, and section 1013 (b) of the revenue act of 1924.
The facts in this case as far as the question of exemption is concerned are practically the same as in the Hardware Underwriters case; that is to say, that the sums which the *43 subscribers were required to deposit in order to secure insurance or a renewal of their contracts were arbitrarily fixed by the attorney in fact, and that these deposits were not limited to amounts needed “ for the sole purpose of meeting expenses.” This appears not only from the terms of the subscription agreement but from the fact that the plan of the association embraced the building up of a surplus and reserve, and, further, that a part of plaintiff’s income was derived from interest on investments and reserve deposits.
Plaintiff was taxed under section 1000 (a) arid (c) of the revenue act of 1918, 40 Stat. 1126, as a company “ carrying on or doing business,” as we have held, for all practical purposes, as a mutual insurance company.
The question remaining is whether plaintiff was exempt from taxation under section 231 (10)[2] of the revenue act of 1918, 40 Stat-. 1076, and section 1013 (b)[3] of the revenue act of 1924, 43 Stat. 343.
It will be seen from section 231 (10) of the act of 1918 that the farmers’ and mutual hail, etc., companies thereby exempt, were those only whose income “ consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting expenses.” Plaintiff does not come within this limitation, as a portion of its income was interest on invested capital, surplus and reserve, and also as the amounts collected as premiums and dues were not for “ the sole purpose of meeting expenses,” but for reserve and surplus. It thus appears that the plaintiff is not exempt under section 231 (10), and as section 1013 (b) applies to companies “ if otherwise exempt under such paragraphs,” i. e., *44 section 231, and plaintiff not being exempt, it clearly does not apply to the plaintiff.
The said section 1000 (a) and (c) imposes a tax on “ every domestic corporation * * * carrying on or doing business,” and this tax is applied by the act to “ mutual insurance companies.”
From these domestic corporations, including mutual insurance companies so taxed, section 231 (10) exempts certain domestic corporations, among others, “ farmers’ or other mutual hail, cyclone, or fire insurance companies.” The exemption of these latter companies rests upon three conditions :
1. That the company should be “ of a purely local character ”;
2. That its income should consist “ solely of assessments, dues, and fees collected from members,” and
3. That such assessments, dues, and fees so collected should be “ for the sole purpose of meeting expenses.”
It is to be noted that Congress in fixing these three conditions showed an intention to limit the exemptions strictly. In the first it used the word “ purely,” which means “ completely, absolutely ”; in the second it used the word “ solely,” which means “ only ”; and in the third it used the word “ sole,” which means “ single,” thus making these exemptions emphatically and strictly limited in each case, and excluding therefrom any corporation or association such as this plaintiff is held to be, the conduct of whose business brings it withip any one 'of these conditions; that is to say, if it is not “ of a purely local character,” it is not exempt; if its income is from other sources than fees and dues, it is not exempt; if its assessments and dues are for other purposes than meeting expenses, it is not exempt.
Section 1013 (b) removed only the first one of these conditions on the exemption, that is, “ of a purely local character,” and Congress, to remove all doubt as to whether it did, provided that it should only apply to “ companies otherwise exempt; ” that is to say, that the fact that a company was “ of a purely local character ” did not exempt it if under the other two said conditions, 2 and 3, it was not exempt, and a fortiori left it where it was before, under section 231. *45 unaffected by section 1013 (b) and as if the latter had never been enacted, which disposes of the plaintiff’s claim to exemption.
As plaintiff was not exempt under section 1013 (b), it could be held, as was held in the Hardware Underwriters ease, that to be exempt under section 231 it must be of “ a purely local character.” That plaintiff is not such a company is too evident from the facts to need discussion. It exchanged contracts of indemnity, and reinsured with other companies outside of the State of New York.
Another consideration is that repeated efforts were made in Congress to obtain legislation exempting reciprocal or interinsurance exchanges, such as the plaintiff, but they failed until the revenue act of 1928, 44 Stat. 40, was passed, when they were included in the exemptions of section 231. This last act, of course, has no application to this case.
We hold also, as -we held in the Hardware Underwriters ease, that the burden is on the plaintiff to show that it is within the exemption, which it has failed to do in this case. Metcalf & Eddy v. Mitchell, 269 U. S. 514, 520; Cornell v. Coyne, 192 U. S. 418, 431; Phoenix Insurance Co. v. Tennessee, 161 U. S. 174, 177; Frank H. Mesce v. United States, 64 C. Cls. 481, 495 (certiorari denied), and New York Trust Co. v. United States, 63 C. Cls. 100, 102 (certiorari denied).
The petition should be dismissed, and it is so ordered.
SiNNott, Judge; Geeen, Judge; Moss, Judge; and Booth, Chief Justice, concur.

 Sec. 1000. (a) That on and after July 1, 1918, in lieu of the tax imposed hy the first subdivision of section 107 of the revenue act of 1916—
(1) Every domestic corporation shall pay annually a special excise tax with respect to carrying* on or doing* business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included; * * *
* * * * •
(c) * * * The taxes imposed by this section shall apply to mutual insurance companies, and in the case of every such domestic company the tax shall be equivalent to $1 for each $1,000 of the excess over $5,000 of the sum of its surplus or contingent reserves maintained for the general use of the business and any reserves the net additions to which are included in net income under the provisions of Title II, as of the close of the preceding accounting period used by such company for purposes of making its income-tax returns. * * *

 Sec. 231. That the following organizations shall he exempt from taxation under this title * * * :
(10) Farmers’ or other mutual hail, cyclone, or fire insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations of a purely local character, the income of which consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting expenses.

 Sec. 1013. (b) The exemption provided in paragraph (10) of subdivision (a) of section 11 of the revenue act of 1916, and in subdivision (10) of section 231 of the revenue act of 1918, and in subdivision (10) of section 231 of the revenue act of 1921, shall be granted to farmers’ or other mutual hail, cyclone, or fire insurance companies (if otherwise exempt under such paragraphs), whether or not such organizations were of a purely local character. Any taxes assessed against such organizations shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded.