**BIRDSBORO STEEL FOUNDRY & MACHINE CO. et al. v. UNITED STATES.**

No. K—508.

Court of Claims.
June 5, 1933.

Thomas G. Haight, of Jersey City, N. J. (J. Marvin Haynes and Robert M. Montgomery, both of Washington, D. C., on the brief), for plaintiffs.

Ralph C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

This case involves an alleged tax overpayment of $72,219.68, for 1918, by reason of the disallowance by the Commissioner of a deduction from gross income of $80,410.21 determined to be worthless and charged off by plaintiff in 1918. This alleged debt from Brown and Munsell to plaintiff arose and accrued between May, 1898, and December, 1905, under a certain contract between Brown and Munsell and plaintiff's predecessor, the Diamond Drill & Machine Company, for the manufacture by plaintiff of certain guns and gun mounts for which Brown and Munsell had a contract with the United States.

Plaintiff contends that this debt was due it by Brown and Munsell and, although they were insolvent prior to 1918, it was entitled under its contract with them to be paid for the work performed and the machinery and equipment purchased and installed for the manufacture of guns out of any amounts paid by the government to Brown and Munsell under their contract with the government; that the debt was not worthless and that it was not determined to be worthless and charged off until 1918 when it was finally decided by the Supreme Court on April 22, 1918, in Saalfield, Administrator of Brown, Surviving Claimant, v. United States, 246 U. S. 610, 38 S. Ct. 397, 62 L. Ed. 895, Ann. Cas. 1918E, 1, that Brown and Munsell were not entitled to

recover from the government under their contract with it.

It is also contended by plaintiff that if the amount of $80,410.21 was not properly deductible as a bad debt, it was deductible as a loss sustained in 1918.

It is suggested by counsel for the defendant that no indebtedness from Brown and Munsell to plaintiff ever existed and that plaintiff never became possessed of an asset or a debt which could be charged off and claimed as a deduction from gross income, but, in our opinion, this position cannot be sustained under the contract.

■ The expenditures were made under a contract between plaintiff's predecessor and Brown and Munsell which provided that the former would build the guns for certain specified prices for labor and overhead, together with a certain percentage of profits, and should be reimbursed "for all steel and other material used in the construction of the guns." The contract provided further that "payments are to be made to said party of the first part (the company) as the money is received from the governments or parties for whom the work is being done"; and also that Brown and Munsell should "draw the money and hand the Government drafts, or other moneys, properly endorsed over to the Diamond Drill & Machine Company as soon as received by them," and that the latter should then reimburse itself for all steel used in the construction of the guns and money due for labor, overhead, profits, etc., as provided in the contract, and then turn over the balance to Brown and Munsell. This was referred to as a "settlement," and the contract provides that "such settlements to be made upon receipt of payment for each gun." Under this provision of the contract the time of payment by Brown and Munsell of amounts due plaintiff for work performed by it under its contract with them did not arise until the money was received from the government or until it was determined that the government was not indebted to Brown and Munsell under their contract with it. But we think it is clear that when the company made the expenditures and performed the work which the contract called for, the contract then created between the parties the relationship of debtor and creditor; and, had Brown and Munsell not died insolvent prior to the time that it was finally determined that the government was not liable to them for any amount, plaintiff would have had a valid and collectible debt from them. The facts establish that the parties to the contract intended to and did construe the above-

quoted provisions to provide only that the time for payments should not initially arise until the government had paid Brown and Munsell. This, however, did not prevent the relationship of debtor and creditor from attaching and we think there was a complete obligation on the part of Brown and Munsell under their contract to pay the plaintiff's predecessor at some time for the work performed for them. The relationship of debtor and creditor arises where one person, by contract or law, is liable or bound to pay another an amount of money, certain or uncertain, and it is not necessary that the debt shall be due in the sense that it is then collectible; it must be an outstanding obligation, which, if not due at the time, will certainly become due at some future date.

Had Brown and Munsell been paid by the government, or had recovered any amount from it by suit, their obligation to pay the company would have become due.

■ The contract contained no provision and, we think, is not susceptible of construction that if Brown and Munsell did not receive anything from the government they should be relieved from the obligation to pay the moneys which they expressly agreed to pay to the company for labor, material, and overhead costs. There was no provision that the parties should share any losses that might arise from building the guns, and, although the contract did not contain any provision as to when the company should be paid, if the government should not pay Brown and Munsell or it was determined that no payments could be recovered from the government, the law would imply a stipulation for payment on demand or within a reasonable time.

The contract between Brown and Munsell and plaintiff was made in the light of the contract between Brown and Munsell and the government, and the parties must necessarily have contemplated that the guns might not come up to the tests required by the contract between Brown and Munsell and the government, and that, in that event, the latter would decline to pay anything for them. If it had been the intention of the parties that, in the event of this contingency, the Diamond Drill & Machine Company was not to receive anything for the expenditures made by it under its contract with Brown and Munsell, a provision to that effect would certainly have been incorporated in the contract.

■■ Little need be said with reference to when the debt became worthless for the purpose of deduction from gross income for tax purposes. Inasmuch as the time for payment

of the amounts due the company did not arise until the government had paid Brown and Munsell, or it had been decided that there was no obligation on the part of the government to pay them, the debt was not worthless within the meaning of the revenue acts and it was impossible to ascertain that it was worthless in any year while it was in litigation and prior to the decision of the Supreme Court in 1918. Broadway Savings Trust Co. v. United States, 66 Ct. Cl. 429; Daniels & Fisher Stores Co. v. United States, 56 F.(2d) 477, 480, 74 Ct. Cl. 233. At the time the Supreme Court finally settled the question Brown and Munsell had died insolvent, consequently there was no possibility of collecting anything from either of their estates. Thus the debt was in truth and in fact determined to be worthless in 1918 and was charged off in that year.

The decisions are uniform that a debt cannot be determined to be worthless, or a loss cannot be taken with respect thereto so long as it is in litigation and has not been finally decided.

■ Even if the amount of $80,410.21 was not deductible as a worthless debt in 1918, we think it was deductible in that year as a loss sustained under section 234 (a) (4) of the Revenue Act of 1918 (40 Stat. 1078), which provides that in computing net income there shall be allowed as deductions not only bad debts, but, also "Losses sustained during the taxable year and not compensated for by insurance or otherwise." If under the contract between plaintiff and Brown and Munsell the right, as distinguished from the time of payment, of plaintiff to receive anything was dependent upon the payment of Brown and Munsell by the government, the plaintiff must be considered to have embarked on a joint venture with Brown and Munsell in the carrying out of its part of which it expended $80,410.21 for labor, material, and equipment. As it was eventually decided that there was no liability on the part of the government to Brown and Munsell, plaintiff must be held to have lost the funds which it had thus invested. Lewellyn v. Electric Reduction Co., 275 U. S. 243, 48 S. Ct. 63, 64, 72 L. Ed. 262. In that case the loss was claimed as a deduction in 1918. Three separate suits with respect thereto were instituted in 1919. In 1922 all three suits had been decided against the company. These facts were mentioned by the court to show that the loss had not been sustained in 1918. The court also emphasized that the company "did not charge off the $27,000 on its books in 1918, but continued to carry it as an item in its 'bills receivable' account." The court also further stated that "it claimed no loss on account of the payment in its tax return for that year." While the court in the Electric Reduction Case held only that the deduction could not be had for 1918, the opinion clearly indicates that the loss was deductible in 1922.

In Lucas v. American Code Co., Inc., 280 U. S. 445, 449, 50 S. Ct. 202, 203, 74 L. Ed. 538, the court held that "generally speaking, the income tax law is concerned only with realized losses, as with realized gains," and held that even where the books were kept on an accrual basis it was improper to take as a loss damages for breach of a contract in the year in which the breach took place where the amount was not determined or paid until later and at the time of the breach liability was denied and strenuously contested. When liability is contested the institution of a suit does not, of itself, create certainty of loss.

In Daniels & Fisher Stores Co. v. United States, supra, this court said "We think that losses which depend on the result of a contested action in court cannot be said to be definitely fixed prior to the rendition of judgment therein. * * * "

The deduction of the debt involved results in an overpayment of $72,219.68 for 1918 which the plaintiff is entitled, in our opinion, to recover with interest. Judgment will be entered accordingly. It is so ordered.

BOOTH, C. J., did not hear this case on account of illness and took no part in its decision.

GREEN, Judge.

I concur on the second ground stated in the foregoing opinion, but I am inclined to the view that the contract between Brown and Munsell and the plaintiff made the liability of the former merely a contingent one depending upon whether anything became due from the government. When the Supreme Court, in 1918, decided that Brown and Munsell could not recover from the government, it thereby in effect adjudicated, as it seems to me, that there was no liability on the part of Brown and Munsell to the plaintiff, and that the contingency upon which such liability might have been founded had never existed. There is no question but that the plaintiff sustained a loss, and, as stated in the majority opinion, the loss occurred in 1918 regardless of whether the relation of debtor and creditor existed between the plaintiff and Brown and Munsell.