PHILLIP APPLEGATE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Applegate v. Commissioner
Docket No. 15678-90.
United States Tax Court
T.C. Memo 1992-156; 1992 Tax Ct. Memo LEXIS 159; 63 T.C.M. (CCH) 2433; T.C.M. (RIA) 92156; March 18, 1992, Filed *159 Decisions will be entered under Rule 155. Robert D. Reed, for petitioner. Derek B. Matta, for respondent. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax for the calendar years 1984 and 1985 in the following amounts: Additions to tax
Year
Deficiency
Sec.6651
Sec. 6653
Sec. 6653
Sec. 6654
(a)(1)
(a)(1)
(a)(2)
1984
$  86,443
$ 21,611
$ 4,322
[1]
$ 5,434
1985
155,553
38,888
7,778
[1]
8,913
The parties have by agreement disposed of all issues for the year 1985. Petitioner in his brief states that the only remaining issue for 1984 is whether petitioner's investment in Western Placer Mines, Inc., became totally worthless in 1984, and if so, the amount of the deduction to which petitioner is entitled under section *160 165. [1] At the trial petitioner questioned an amount of $ 42,489, which respondent included in his income as an amount received with respect to "Stock-Prudential Bache Securities". Testimony was offered with respect to certain stock petitioner claimed to have bought and sold through D.H. Blair, but petitioner testified that those sales were not through Prudential Bache. The record was left open for 30 days for petitioner to obtain from Prudential Bache and/or D.H. Blair records of his purchases and sales of stock in 1984 and to produce a witness to testify with respect to such purchases and sales. Petitioner produced no such records or testimony, so we conclude from the statement in his brief that he has abandoned this issue. At the trial, petitioner offered no evidence as to the additions to tax determined by respondent for 1984 and from the statement in his brief we conclude that he has abandoned any issue with respect to respondent's determination of additions to tax for 1984. *161 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in San Antonio, Texas, at the time of filing his petition in this case. Petitioner was engaged in the construction business as a sole proprietor. Sometimes he acted as a general contractor and sometimes as a subcontractor. Petitioner earned between $ 10,000 and $ 20,000 a year from his construction business during the late 1970s and early 1980s and in 1983 he earned between $ 20,000 and $ 30,000 from this business. Petitioner owned his house and from two to four motor vehicles during the 1980s. In 1984 petitioner was paid $ 45,000 for construction work and received $ 635 in interest income. Between January 16, 1984, and August 10, 1984, petitioner purchased through National Financial Services or Broadway Brokerage Services various types and amounts of stock with a total basis of $ 262,831.29 and sold these stocks through these same brokers during 1984 for $ 308,916.22, resulting in a net gain of $ 46,084.93. Petitioner invested $ 5,000 in December 1983 and $ 37,500 in 1984 in Western Placer Mines, Inc. (Placer Mines), and received a one-eighth working interest in the operation. *162 Mining operations at the Placer Mines began in August 1984 and were discontinued in November 1984. In November or December of 1984 petitioner decided not to invest any more in the Placer Mines venture. The lease agreement that Placer Mines had with the property owners required Placer Mines to reclaim the land after completion of mining operations. Placer Mines refurbished the land in April or May of 1985, and the lease covering the prospect reverted to the lessor in 1985. Gold recovered during the period of operation in 1984 was distributed to the persons who had an interest in Placer Mines in January 1985. Mr. Edward E. Martin was an officer of Placer Mines. Mr. Martin filed a lawsuit on behalf of Placer Mines against the manufacturer of a plant which Placer Mines had purchased from that manufacturer and after attempting to use it decided that it was defective. The suit sought recovery of $ 300,000 for losses incurred by Placer Mines due to the defective plant. At the time of the trial of this case, this lawsuit was still pending. If the lawsuit is successful, Mr. Martin intends to disburse any money recovered from the manufacturer among the working interest partners according *163 to their pro rata share after he recovers the amounts he invested in the venture. Mr. Martin had loaned Placer Mines approximately $ 50,000. Petitioner failed to file income tax returns for the 1984 and 1985 taxable years. Substitutes for returns were prepared by respondent for petitioner. Neither on these substitute returns nor in the notice of deficiency did respondent allow petitioner a deduction in 1984 for a loss from the worthlessness of his investment in Placer Mines. OPINION Petitioner invested $ 5,000 and $ 37,500 in Placer Mines in 1983 and 1984, respectively. Petitioner contends that this investment became worthless in 1984 and that he is therefore entitled to a loss deduction under section 165. Section 165(a) allows a taxpayer a deduction for any loss sustained during the taxable year which is not compensated for by insurance or otherwise. In order to be entitled to such a loss deduction, a taxpayer must establish the amount of his investment and that his investment became worthless during the taxable year involved. Generally in order to show the worthlessness of an investment, a taxpayer must show that the transaction is closed or completed. Sec. 1.165-1(b) *164 and (d)(1), Income Tax Regs. One of the essential inquiries in determining if a transaction is closed in the year the deduction is sought is whether there exists a substantial possibility that the alleged losses could be recouped by actions against responsible third parties or otherwise. Boehm v. Commissioner, 326 U.S. 287, 291 (1945); Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 807 (1974), affd. 521 F.2d 786 (4th Cir. 1975). Where such a prospect of recovery is found to exist in the year the taxpayer has argued that a loss is deductible, that year is not the proper year in which to claim the loss. Lewellyn v. Electric Reduction Co., 275 U.S. 243, 246-248 (1927); Ramsay Scarlett & Co. v. Commissioner, supra at 807. No loss is sustained until it can be ascertained with reasonable certainty that full reimbursement will not be received. Sec. 1.165-1(d)(2)(i), Income Tax Regs. Whether a prospect of recovery exists is a question of fact to be determined upon an examination of all facts and circumstances surrounding the transaction. Boehm v. Commissioner, supra; *165 Ramsay Scarlett & Co. v. Commissioner, supra; sec. 1.165-1(d)(2)(i), Income Tax Regs.
Mr. Martin testified that there is currently a lawsuit for all losses incurred by Placer Mines pending against the manufacturer of the extraction plant purchased by Placer Mines and that, if the lawsuit is successful, the proceeds remaining after he recovers his $ 50,000 investment will be distributed to the working interest partners according to their pro rata shares. The pending lawsuit provides petitioner with an opportunity to recover some and perhaps all of his investment in Placer Mines. Petitioner argues that the operations of Placer Mines ceased in 1984 and that the activities of Mr. Martin were merely a winding up of Placer Mines. The evidence shows that Placer Mines ceased gold mining operations in 1984, and that the activities of Mr. Martin in 1985 and subsequent years were geared to recovering as much as possible for the persons with an interest in Placer Mines. While these activities of Mr. Martin might be viewed as winding up the affairs of Placer Mines, whether petitioner's interest in Placer Mines became worthless cannot be determined until it can be ascertained *166 whether he will recover his investment. When Placer Mines ceased to conduct mining operations is not the controlling fact. The controlling fact is whether petitioner's interest in Placer Mines still had value in 1984. Petitioner also argues that his investment in Placer Mines was worthless in 1984, irrespective of the pending lawsuit, because Mr. Martin would recover his loan to and investment in Placer Mines before others recovered any investments and there was little probability that a favorable judgment would fully repay all such indebtedness. A claim for $ 300,000 was made in the lawsuit. Placer Mines was indebted to Mr. Martin in the amount of approximately $ 50,000. Therefore, a favorable judgment in the lawsuit could be sufficient to repay all or part of petitioner's investment in Placer Mines. Because there exists a substantial possibility that the losses of Placer Mines would be recouped by action against responsible third parties, the transaction is not closed and petitioner is not entitled to the loss deduction he claims with respect to his investment in Placer Mines. Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest payable under sec. 6601 with respect to the portion of the underpayment due to negligence pursuant to sec. 6653(a)(1).↩
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩