A. CLIFTON HODGES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hodges v. Commissioner
Docket No. 4655-92
United States Tax Court
T.C. Memo 1993-316; 1993 Tax Ct. Memo LEXIS 317; 66 T.C.M. (CCH) 155; July 19, 1993, Filed *317 Decision will be entered for respondent. A. Clifton Hodges, pro se. For respondent: Dwight Montgomery. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) (3) [1] and Rules 180, 181, and 182. Respondent determined a deficiency in petitioner's 1988 Federal income tax in the amount of $ 3,770. Respondent also determined an addition to tax under section 6653(a)(1) in the amount of $ 189. The issues for decision are: (1) Whether petitioner is entitled to a bad debt deduction; (2) whether petitioner is entitled to a deduction claimed on his Schedule C for "fees advanced"; (3) whether petitioner is entitled to a deduction claimed on his Schedule C for rent on business property; and (4) whether petitioner is liable for the addition to tax. Some of the facts have been stipulated *318 and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition herein, petitioner resided in Tustin, California. Petitioner bears the burden of showing respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner claimed expenses for his legal practice on his Schedule C for 1988. In the notice of deficiency, respondent disallowed $ 7,750 of the amount claimed as a bad debt deduction, $ 1,050 claimed as "fees advanced", and $ 2,400 claimed as rent on business property. We must decide whether petitioner properly claimed the items disallowed by respondent. Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving he is entitled to any deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). If certain claimed deductions are not adequately substantiated, we may be permitted to estimate them when we are persuaded by the record that the taxpayer has incurred such expenses and we have a basis upon which to make an *319 estimate. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Bad Debt Deduction
On or about February 10, 1986, petitioner and Mr. Russell Swarthout, allegedly an attorney admitted in the State of Michigan and former judge, executed a document entitled "Memorandum Agreement" which provided that Mr. Swarthout would represent petitioner and Clayton International Investment and Holding Company Limited[2] *320 during the fiscal year ending January 15, 1987. The Memorandum Agreement further stated that Mr. Swarthout was to receive a "general legal retainer" [3] in the amount of $ 25,000, and that such retainer included Mr. Swarthout's prepaid business and travel expenses. Petitioner testified that Mr. Swarthout had been retained to secure European loans, so as to enable petitioner to purchase real estate in southern California. It was petitioner's belief that if Mr. Swarthout was unable to obtain the financing, petitioner's retainer would be returned, minus actual expenses. Petitioner testified that during 1986 petitioner paid Mr. Swarthout a total of $ 20,000. [4] Petitioner obtained a receipt for an initial payment of $ 12,250; however, no receipt was obtained for the remaining payments allegedly made by petitioner. Moreover, petitioner testified that because he owed the Government several hundred thousand dollars in back taxes from 1982, he did not have a bank account in 1986, and, therefore, the payments to Mr. Swarthout were in cash. Moreover, the cash transfers were allegedly made in London, England. Petitioner *321 further testified that, in early 1987, it became apparent to him that Mr. Swarthout would be unable to obtain the financing for him, and shortly thereafter, Mr. Swarthout disappeared. Petitioner and an associate, Mr. Colin, attempted to locate Mr. Swarthout during the remainder of 1987 and most of 1988. As part of his endeavors to locate Mr. Swarthout, petitioner met with an attorney in Century City, California, [5] and contacted another associate in Switzerland, Mr. Goodman. Apparently, such efforts were to no avail, and petitioner deducted the $ 20,000 allegedly paid to Mr. Swarthout as a bad debt deduction on his 1988 tax return. [6]
Respondent disallowed $ 7,750 of the amount claimed on petitioner's 1988 tax return as a bad debt *322 deduction. [7] Respondent contends that such amount is not deductible under section 166 because no debtor-creditor relationship existed between petitioner and Mr. Swarthout. Alternatively, respondent contends that, if we find that such amount is deductible under section 166, petitioner has failed to substantiate that he paid Mr. Swarthout more than $ 12,250, and that the debt became worthless in 1987, rather than in 1988 as claimed by petitioner. *323 Section 166(a)(1) allows a deduction for "any debt which becomes worthless within the taxable year." The regulations further provide that "Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs. Generally, a claim which arises out of a breach of contract, prior to being reduced to judgment, does not create a debtor-creditor relationship because the injured party has only an unliquidated claim for damages. Lewellyn v. Electric Reduction Co., 275 U.S. 243 (1927); Proesel v. Commissioner, 77 T.C. 992, 1002 (1981); Garber v. Commissioner, T.C. Memo. 1984-455. Here, the Memorandum Agreement provided for Mr. Swarthout to receive $ 25,000 as a general legal retainer. There is no language therein to indicate that any monies were returnable or under what circumstances. Petitioner's belief that funds, less expenses, would be returned under certain circumstances is unsupported by any corroborating *324 evidence. Since the question of refundability and amount thereof were not resolved, we cannot conclude that a debtor-creditor relationship existed. Based on this record, we conclude that petitioner's claim against Mr. Swarthout was an unadjudicated claim for breach of contract and that no debtor-creditor relationship existed as required by section 166. [8] Accordingly, we sustain respondent as to this issue. Fees Advanced
Petitioner claimed $ 1,050 on his 1988 tax return as a deduction for "fees advanced". Petitioner testified that the amounts claimed as "fees advanced" represented costs for either deposition transcripts or court filing fees which he advanced on behalf of his clients *325 in contingency matters. When questioned by the Court, petitioner testified that he would recover the amounts advanced when the case was successfully settled. [9]
*326 We have previously held that litigation costs which are advanced by a law firm under a contingent fee agreement which provides for the repayment of those advanced costs solely from the amount recovered are not deductible in the year advanced. Such costs are not deductible because they are intended to be in the nature of loans or advancements. See Canelo v. Commissioner, 53 T.C. 217, 223-227 (1969), affd. 447 F.2d 484 (9th Cir. 1971); Boccardo v. Commissioner, T.C. Memo. 1993-224. However, when pending cases are closed without recovery of the amounts advanced, then deductions for such amounts are allowed. Canelo v. Commissioner, supra at 226. Petitioner has failed to present any evidence that establishes that any portion of the amount claimed on his Schedule C as "fees advanced" pertained to cases which were closed in 1988 without recovery of the amounts advanced. Based on petitioner's testimony, we conclude that the amounts claimed as "fees advanced" constituted advancements or loans by petitioner to his clients for pending contingency matters, and are *327 therefore not deductible. Accordingly, we sustain respondent on this issue. Rent
Petitioner claimed $ 2,400 as rent expense for an office on his 1988 return. At trial, petitioner testified that in 1987, due to his tax problems, he accepted employment with a law firm located in Marina del Rey, California, where he worked during 1988. However, as petitioner still had pending cases from his private practice, he rented a room in the apartment of Ms. Tori Thompson (whom he subsequently married and who is hereinafter referred to as Mrs. Hodges) for $ 200 a month for use as a temporary office. As petitioner did not have a bank account during 1988, he paid Mrs. Hodges in cash. Petitioner further testified that he had no permanent residence during 1988 and that he periodically resided with Mrs. Hodges. Moreover, petitioner kept some of his personal belongings at Mrs. Hodges' apartment. Although Mrs. Hodges testified at trial, we do not find her testimony persuasive. During 1988, Mrs. Hodges had difficulty paying the rent on her apartment and rather than finding someone to share her apartment, she allegedly rented a room to petitioner for use as an office. Mrs. Hodges also *328 testified that she did not report the amounts received from petitioner on her income tax return because she used the money to pay the expenses for a horse she owned. Based on this record, we cannot conclude that petitioner paid $ 2,400 or any other amount to Mrs. Hodges in 1988 or that such payments constituted rent for a business office. Accordingly, we sustain respondent on this issue. Addition to Tax
Respondent determined an addition to tax for negligence under section 6653(a)(1) for the 1988 tax year. Negligence under section 6653(a)(1) is the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner also has the burden of proof on this issue. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioner has failed to demonstrate that he was not negligent or that he had a reasonable basis for claiming any of the deductions the disallowance of which has been sustained by this Court. Moreover, as petitioner is an attorney, he should have been aware of his duty to maintain accurate books *329 and records. Accordingly, we sustain respondent. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Clayton International Investment and Holding Company Limited (Clayton International) was a chartered corporation. Although petitioner was to be the sole shareholder of Clayton International, the corporation never came into existence, in that it never issued stock, accepted funds, or held assets.↩
3. The term "retainer" is defined in Black's Law Dictionary, in pertinent part, as follows: denotes the fee which the client pays when he retains the attorney to act for him, and thereby prevents him from acting for his adversary. [Black's Law Dictionary 1183 (5th ed. 1979).]↩
4. Apparently, petitioner had received a $ 5,000 credit for services he had rendered to Mr. Swarthout.↩
5. Petitioner could not recall the attorney's name.↩
6. Petitioner has not contended that the loss in question is deductible under section 165 as a theft loss. But see sec. 165(a); sec. 1.165-1(d)(3), Income Tax Regs.↩, regarding the proper year in which a theft loss is deductible.
7. Respondent has not attempted to reverse the allowance of $ 12,500 nor seek an increased deficiency. In this connection it should be noted that respondent's failure to disallow $ 12,500 of the claimed loss does not estop or preclude her from now taking the position that the transaction did not create a debtor-creditor relationship; nor does petitioner contend to the contrary. Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 183 (1957); National Lead Co. v. Commissioner, 40 T.C. 282, 297 (1963), affd. in part and revd. in part 336 F.2d 134↩ (2d Cir. 1964).
8. Moreover, had we determined that petitioner had a debtor-creditor relationship with Mr. Swarthout for purposes of section 166, petitioner has failed to produce any evidence which would substantiate that petitioner made payments to Mr. Swarthout in excess of the amounts not disallowed by respondent in the notice of deficiency.↩
9. At trial, petitioner testified as follows: Court: And would you normally bill your clients for the -- these costs? Petitioner: No. These were contingency matters, so they were situations where I advanced the costs on behalf of the clients and then recovered the costs when the case ultimately settled. Court: Wouldn't you be getting your costs first before the contingencies come out? Petitioner: Yes. Court: So that would be part of the billing. Petitioner: Well, at the conclusion of the case, yes, but I understood the word "billing" to mean like on a monthly basis or some regular basis where shortly after the costs are incurred, they are billed to the client and the client pays you. Court: So you are in fact -- you're in fact loaning these monies to the client? Petitioner: Yes. Court: Okay. And then at some time maybe in a subsequent year, you -- the client would either not pay you the loan because they lost or else you'd get your loan back in full? Petitioner: That's correct.↩